# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 10, 2013 Session

## IN RE KAYLYN M. R.[1]

**Appeal from the Juvenile Court for Jefferson County**
**No. 1201246    Hon. Benjamin Strand, Jr., Judge**

---

**No. E2013-01520-COA-R3-PT-FILED-MARCH 19, 2014**

---

This is a termination of parental rights case in which the Tennessee Department of Children's Services filed a petition to terminate the parental rights of Father to the Child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of Father's parental rights on the statutory grounds of persistence of conditions, abandonment for failure to provide a suitable home, and abandonment for wanton disregard of the Child's welfare. The court likewise found that termination of Father's parental rights was in the Child's best interest. Father appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, and THOMAS R. FRIERSON, II, JJ., joined.

Brett J. Bell, Dandridge, Tennessee, for the appellant, Christopher W. R.

Robert E. Cooper, Jr., Attorney General and Reporter, and Mary B. Ferrara, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

Jeremy Churchwell, Dandridge, Tennessee, guardian ad litem for the minor, Kaylyn M. R.

---

[1]This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

# OPINION

## I. BACKGROUND

Kaylyn M. R. ("the Child") was born to Jessica S. ("Mother") and Christopher W. R. ("Father") in March , 2011, while Mother was married to Larry F. ("Legal Father").[2] The Child was removed from Mother and Father on February 3, 2012, when the Tennessee Department of Children's Services ("DCS") learned that the Child had been left with various people while Father recovered from gunshot wounds he received while criminally involved in a home invasion. The hospital discovered that Father attempted to secretly give his medication to Mother, who had a serious drug addiction. Father was incarcerated following his release from the hospital. He was released on April 20, 2012, but he failed to appear at the Child's adjudicatory hearing, where the Child was adjudicated as dependent and neglected. Father was eventually incarcerated and subsequently received an effective five year sentence for his role in the home invasion and two unrelated charges.

On November 20, 2012, DCS filed a petition to terminate Father's parental rights, alleging that he had abandoned the Child by engaging in conduct that exhibited a wanton disregard for the Child's welfare and by failing to provide a suitable home. DCS also alleged that the conditions which led to removal persisted.

A hearing was held on the termination petition at which several witnesses testified. Father, who was 23 years old at the time of the trial, testified that he was in the hospital when the Child was removed because he had been shot while attempting a robbery under the influence of drugs. When he was released from the hospital, he was incarcerated for several weeks until his release in May 2012 for approximately six weeks. He related that he visited the Child during that time and that he lived with his father, Ernie R. ("Grandfather"), because he had lost his apartment. He acknowledged that his criminal history began when he was a juvenile, but he explained that his criminal behavior and drug use escalated when he met Mother three years ago.

Father acknowledged that he was already on probation for a misdemeanor charge in another county when he was shot during the home invasion. He stated that he had recently been re-classified as a minimum security prisoner and would soon be permitted to receive alcohol and drug treatment and complete his parenting and domestic violence classes and his mental health assessment while incarcerated. He identified a letter in which his counselor described him as a "model inmate" with no disciplinary history. He was hopeful that he would be released on parole in December 2013 and would be able to complete the steps

---

[2]Mother and Legal Father's parental rights were also terminated. They did not appeal the court's decision.

necessary to regain custody of the Child. He related that he had been taking a masonry class that would hopefully enable him to obtain steady employment once released. He explained that he would live with his mother, Connie C. ("Grandmother"), once released.

Emily Harris, a family social worker for DCS, testified that she had been the Child's case manager since the time of removal in February 2012. She recalled that the Child was initially removed because she had been left with various people while Father recuperated in the hospital. She stated that while in the hospital, "the hospital staff reported that [Father] was keeping his pain medications in his mouth and then providing [them] to [Mother] when the nursing staff left the room." She related that after Father's release from the hospital, he was in jail from February 2012 until April 2012 and was sent to prison in June 2012 and had remained there since that time. She identified certified copies of Father's judgments of conviction, which reflected Father's guilty plea convictions of aggravated burglary, a Class C felony; attempted aggravated burglary, a Class D felony; theft, a Class D felony; and vandalism, a Class A misdemeanor. The burglary and attempted burglary were committed on January 13, 2012, while the vandalism was committed on November 8, 2011, and the theft was committed on November 29, 2011.

Ms. Harris acknowledged that Father exhibited some effort while he was released as evidenced by one visit with the Child and his attendance at two parenting classes, but she explained that Father had not finished any of the programs and never received a certificate. She acknowledged that Father had expressed concern for the Child but explained that he had not shown any desire to make lasting changes in his life.

Ms. Harris testified that the Child was placed in foster care because she was unable to find a suitable relative placement. She stated that Grandfather had been declared an unsuitable placement for the Child and that Mother alleged that Grandmother abused drugs. She recalled that Grandmother's drug screen revealed the presence of a drug for which Grandmother could not produce a prescription. She stated that Grandmother had not contacted her after initially expressing interest in caring for the Child. She claimed that the Child was "doing well" in her current placement and had bonded with her foster parents.

Susan S. testified that the Child had resided with her and her husband since February 2012. She related that the Child, who had just turned two years old, was "doing wonderfully." She stated that she loved the Child and that she and her husband intended to adopt the Child as soon as possible. She claimed that her husband had stable employment, while she remained at home caring for the Child. She acknowledged that she had recently received some cards and letters from Father. She stated that Father had not visited her home or provided any form of child support for the Child.

Following the presentation of the above evidence, the trial court held that Father engaged in conduct prior to his incarceration that exhibited a wanton disregard for the welfare of the Child and that Father had abandoned the Child by failing to provide a suitable home for her. The court further held that despite DCS's reasonable efforts, the conditions which led to the removal persisted, that there was little likelihood that the conditions would be remedied, and that the continuation of the Child's relationship with Father would greatly diminish the Child's chances of early integration into a safe and stable home. The court likewise found that termination of Father's parental rights was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Father as follows:

A.   Whether clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-102(A)(iv).

B.   Whether despite reasonable efforts by DCS, clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-102(A)(ii).

C.   Whether despite reasonable efforts by DCS, clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(3).

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must

then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

Father argues that the trial court erroneously considered his juvenile convictions and pending charges in determining that his behavior displayed a wanton disregard for the welfare of the Child. He claims that the court should have limited its consideration to the crimes for which he had been found guilty, which would not support termination of his parental rights on the ground of abandonment. DCS responds that the court was permitted to consider all conduct prior to Father's incarceration and that the evidence presented in this case sufficiently established Father's wanton disregard for the welfare of the Child.

Relative to the alleged abandonment of the Child, the Tennessee Code provides, in pertinent part,

(1)(A) For purposes of terminating the parental [] rights of [a parent] to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the

parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Under this ground of abandonment, the parent's incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental *behavior* that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866 (emphasis added). The court may consider any relevant conduct that occurred prior to incarceration and is not limited to reviewing the four months immediately preceding the incarceration. *Id.* at 870-71. This court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68 (citations omitted).

In its memorandum opinion, the court stated, in pertinent part,

[Father's] criminal conduct started as a teenager when he was caught shoplifting from Wal-Mart. He also has had a robbery charge, domestic violence and a gun charge which he admitted to in his testimony.

At the time the [Child] had been brought into DCS custody, [Father] was in the hospital after being shot during a home invasion. As a result of the home invasion[,] he was charged with aggravated burglary, attempted aggravated burglary, theft and vandalism. He was incarcerated from February 22 to May 4, 2012 and then went to prison on June 26, 2012, where he is presently incarcerated. Already [Father] has had one parole hearing and was denied and has another hearing scheduled for December 2013. He is serving a five (5) year sentence at thirty percent (30%).

The report from the State of Tennessee Board of Probation and Parole attached to the [termination petition] stated that he has a criminal record dating back fourteen (14) years. Also in the report, [Father] has charges for aggravated burglary and theft under $500 pending in Hamblen County, violation of community corrections in Sevier County, and five (5) aggravated burglary charges pending in Jefferson County.

[Father] denies the use of drugs at the time of the hearing[.] However, he admits he was using drugs at the time of the home invasion and also when the [Child] was brought into DCS custody. [Father's] drug use started with marijuana at the age of sixteen (16), alcohol at the age of seventeen (17)[;] he also used oxycontin, hydrocodone, Xanax and morphine at various times.

In so finding, the court held that Father's extensive criminal behavior exhibited a wanton disregard for the welfare of the Child.

Contrary to the trial court's understanding, Father's theft and vandalism convictions were not related to the burglary convictions. The vandalism related to Father's damage to a vehicle owned by Sherry B. on November 8, 2011. The theft related to Father's possession of a stolen vehicle owned by David R. on November 29, 2011. Moreover, the burglary convictions related to two separate home invasions that were attempted or committed on the same day while Father was under the influence of drugs. The record reflects that when Father was unable to gain access to the home of John H., he went to the home of Keith D. and successfully broke into the home. Father's *admitted* criminal behavior occurred while he was an adult, while he was responsible for the Child, and while he was on probation for another conviction. In addition to Father's criminal behavior, he failed to provide support and adequate supervision for the Child. While Father was in the hospital, he left the Child with various unidentified people, while he assisted Mother in the maintenance of her drug habit. It was this behavior that ultimately led to the Child's removal from the home. While released from jail for approximately six weeks, Father visited the Child once, only completed two of six parenting classes, and failed to appear at the Child's adjudicatory hearing, where she was found to be dependent and neglected.

Even when Father's extensive criminal history and his pending criminal charges are left unconsidered as he has requested, his admitted criminal behavior and lack of concern for the Child details a pattern of conduct that evidences his wanton disregard for the welfare of the Child. With these considerations in mind, we conclude that the trial court's finding that Father abandoned the Child is supported by clear and convincing evidence. Thus, a statutory ground existed for the termination of Father's parental rights.

## B. & C.

Only one statutory ground must be established by clear and convincing evidence to justify termination of Father's parental rights. Tenn. Code Ann. § 36-1-113(c). Having found clear and convincing evidence to support the statutory ground of abandonment, we decline to address the remaining grounds.

D.

Having concluded that there was clear and convincing evidence supporting a statutory ground for termination, we now consider whether termination of Father's parental rights was in the best interest of the Child. Although Father has not appealed the court's best interest finding, we have reviewed the issue because of the gravity and finality that this decision will have on Father's parental rights. *See In re Arteria H.*, 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010) (considering the best interest issue even though the issue was not raised on appeal). Following our review, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i). Accordingly, we affirm the trial court's termination of Father's parental rights.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Christopher W. R.

_____
JOHN W. McCLARTY, JUDGE